UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00111-GNS-HBB

JOHN SAWYERS and
ELIZABETH SAWYERS                                                                                      PLAINTIFFS

V.

CHARLIE DRUMMOND                                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion in Limine (DN 35) and Defendant's Motion for Summary Judgment (DN 36). The motions have been fully briefed by the parties and are ripe for adjudication. For the reasons outlined below, Defendant's Motion for Summary Judgment is **GRANTED**, and Defendant's Motion in Limine is **DENIED AS MOOT**.

### I.    SUMMARY OF FACTS AND CLAIMS

In the early morning hours of August 23, 2013, Plaintiff John Sawyers ("Sawyers") was on the back porch of his home in rural Allen County, Kentucky, when he saw lights at a distance near his barn. (J. Sawyers Dep. 28:8-11, July 9, 2015, DN 31). Sawyers went inside to get dressed, and grabbed his handgun and flashlight to investigate. (J. Sawyers Dep. 28:22-29:13). When he reached the barn, Sawyers noticed the lights from the area where his gated driveway meets the public road. (J. Sawyers Dep. 29:15-30:18). He observed two persons walking down the hill away from him to the gate. (J. Sawyers Dep. 30:19-22). Sawyers then drove his truck down the driveway toward the gated entrance and opened the gate to his driveway with a remote. (J. Sawyers Dep. 30:24-32:5).

On the outside of the gate, a truck was parked with two people near it and one inside. (J. Sawyers Dep. 34:8-35:13). These men were later identified as Wade Walker ("Walker"), Brandon Boards ("Boards"), and John Wesley Moses. (J. Sawyers Dep. 34:8-35:13). After driving through the gate, Sawyers drove up to the men to inquire about their presence, and the men informed Sawyers that they were coon hunting. (J. Sawyers Dep. 36:6-14, 37:17-38:1). When Sawyers asked one of them for his name, the man refused to comply. (J. Sawyers Dep. 38:8-11). Sawyers then proceeded to exit his truck with his handgun and flashlight in hand to obtain the license plate number of the men's vehicle. (J. Sawyers Dep. 38:16-19). At that point, an alteration ensued between Sawyers and Walker. (J. Sawyers Dep. 38:20-42:13). After Walker physically restrained Sawyers to prevent him from obtaining the license plate number of the truck, Walker pulled a knife on Sawyers. (J. Sawyers Dep. 38:20-40:14). Sawyers raised his handgun and directed Walker to put the knife away, Walker then retrieved a gun with a laser sight from the truck and confronted Sawyers. (J. Sawyers Dep. 40:19-42:11). After some period of time, the three hunters entered the truck and started backing up. (J. Sawyers Dep. 42:11-14). When Sawyers attempted to get behind the truck to obtain the license plate number, Walker stopped the truck and confronted Sawyers again. (J. Sawyers Dep. 40:14-22). Walker told Sawyers that he would not allow Sawyers to get the license plate number and drove off. (J. Sawyers Dep. 45:24-46:1, 46:8-10).

According to Sawyers, he then followed the truck to obtain its license plate number. (J. Sawyers Dep. 46:8-47:16). As they approached a local bait shop, both vehicles stopped. (J. Sawyers Dep. 47:17-23). Walker exited his truck and ran back to Sawyers' vehicle with a bright light in his hand. (J. Sawyers Dep. 47:25-48:2). Walker attempted to open Sawyers' door and threatened to "whoop [his] ass . . . ." (J. Sawyers Dep. 48:2-4, 48:11-15). Walker then struck

2

Sawyers' truck, causing a chip in the windshield. (J. Sawyers Dep. 48:15-21). Walker returned to his truck, and the pursuit continued. (J. Sawyers Dep. 48:21-25). Sawyers was eventually able to see the license plate number of Walker's truck. (J. Sawyers Dep. 48:24-25).

During the pursuit, both Walker and Sawyers made 911 calls reporting that each had been threatened with a gun by the other. (J. Sawyers Dep. 49:19-51:11; Drummond Dep. 75:19-76:6, July 9, 2015, DN 32). Defendant Charlie Drummond ("Drummond"), an Allen County Sheriff's Deputy, was eventually dispatched to answer the calls. (Drummond Dep. 75:17-76:20). As Drummond neared the location of the vehicles, a 911 dispatcher instructed Sawyers to pull over and stop his pursuit of the truck at Drummond's request. (J. Sawyers Dep. 54:4-5; Drummond Dep. 21:17-24, 77:25-78:5). Sawyers refused and continued to pursue the truck until he encountered Drummond. (J. Sawyers Dep. 55-10-56:5).

When Drummond finally made contact with the trucks, he was traveling in the opposite direction. After passing Walker's truck, Drummond turned around and pulled in behind Walker's vehicle. (Drummond Dep. 19:4-7). Sawyers and his wife were travelling in separate vehicles and pulled up behind Drummond's vehicle in their own vehicles. (J. Sawyers Dep. 56:16-57:20; Drummond Dep. 20:17-21:14). Other officers later arrived at the scene. (J. Sawyers Dep. 57:21-22, 59:1-2; Drummond Dep. 24:11-14). After Drummond spoke with both Walker and Sawyers, Drummond was under the impression that Sawyers was not interested in pursuing criminal charges against the coon hunters. (Drummond Dep. 35:23-36:9, 129:8-19). At Drummond's direction, the parties left the scene. (Drummond Dep. 31:20-32:1).

For several months, there was no apparent law enforcement activity relating to the incident, but Sawyers made repeated inquiries about pursuing criminal charges against the coon hunters. (J. Sawyers Dep. 76:18-77:24). According to Drummond, Allen County Sheriff Jeff

3

Cooke ("Cooke") instructed him to prepare criminal complaints against Sawyers and the other men involved in the incident, which were filed approximately five months after the incident. (Drummond Dep. 101:16-102:7; Cooke Dep. 41:22-42:11, 51:14-52:3; Def.'s Mot. Summ. J. Ex. 1, DN 36-2; Def.'s Mot. Summ. J. Ex. 2, DN 36-3).

Sawyers was charged with three counts of wanton endangerment in the 1st degree, and three counts of menacing in violation of KRS 508.060 and KRS 508.050, respectively. (Def.'s Mot. Summ. J. Ex. 1). During Sawyers' preliminary hearing in Allen District Court, his counsel contested the existence of probable cause and questioned Drummond about the events of the incident. (Prelim. Hr'g DVD, Feb. 19, 2014, DN 37).[1] Based on the evidence presented at the hearing, the Allen District Court found that probable cause existed for the charges. (Def.'s Mot. Summ. J. Ex. 5, DN 36-6). A grand jury later returned a true bill on the menacing charges, but it returned a no true bill on the wanton endangerment charges. (Def.'s Mot. Summ. J. Ex. 6, DN 36-7). On November 6, 2015, an Allen Circuit Court jury acquitted Sawyers of the charges.

On August 21, 2014, Plaintiffs filed this action asserting claims under 42 U.S.C. § 1983 based upon alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. (Compl. ¶¶ 9-18). Sawyers also asserted a claim of malicious prosecution under Kentucky law, and Elizabeth Sawyers asserted a claim for loss of consortium.[2] (Compl. ¶¶ 19-28).

---

[1] The video recording of the preliminary hearing does not contain any time stamps, which prevents exact citations to specific portions of that hearing.

[2] While Plaintiffs have also asserted a fourth cause of action for punitive damages, punitive damages is not a cause of action; rather it is a form of damages available for violations of constitutional rights and the commission of tortious acts. *See Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378-79 (W.D. Ky. 2012) ("[A] claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action." (citation omitted)).

## II.   JURISDICTION

This Court has subject-matter jurisdiction of claims brought under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331.  The Court also has supplemental jurisdiction over Plaintiffs' pendent state-law claims.  *See* 28 U.S.C. § 1367.

## III.   DISCUSSION

### A.   Defendant's Motion for Summary Judgment

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury

could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 1. *Federal Claims - 42 U.S.C. § 1983*

Sawyers alleges the criminal charges initiated by Drummond violated his civil rights under 42 U.S.C. § 1983. That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. More specifically, Sawyers has asserted claims of malicious prosecution and violations of his rights under the Due Process and Equal Protection Clauses of the U.S. Constitution. (Comp. ¶¶ 9-18).

#### a. **Equal Protection**

Drummond seeks summary judgment on the equal protection claim. As a sister court has noted:

> "To establish an equal protection claim under § 1983, Plaintiff must show that []he is a member of a protected class and that []he was intentionally and purposefully discriminated against because of h[is] membership in that protected class." *Jones v. Union Cty.*, 296 F.3d 417, 426 (6th Cir. 2002) (citing *Boger v. Wayne Cty.*, 950 F.2d 316, 325 (6th Cir. 1991)). Alternatively, Plaintiff could allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 939-40 (M.D. Tenn. 2012) (alterations in original) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

In part, Plaintiffs have alleged:

> Plaintiff, John Sawyers, has a constitutional right to equal protection under the laws and Defendant Drummond violated his right by maliciously misapplying criminal laws to John Sawyers and refusing to objectively apply criminal laws to Wade Walker who committed crimes against Mr. Sawyers and assaulted and battered Mr. Sawyers on Mr. Sawyers' own property.

(Compl. ¶ 15). Thus, from the face of the Complaint, Sawyers has neither alleged that he is a member of a protected class nor that he was intentionally discriminated against because of his membership in that protected class. Likewise, Sawyers has neither alleged nor proven that he was treated different than others persons similarly situated in violation of the Equal Protection Clause.[3] The Court will grant summary judgment on this claim.

### b. Due Process/Malicious Prosecution

Sawyers also alleges that his due process rights were violated. From the face of the Complaint, however, it is unclear whether he has alleged a procedural or substantive due process claim

To the extent that Sawyers intended to assert a claim of procedural due process, he failed to allege the inadequacy of state remedies as a required element of that claim and provided no such supporting proof. *See Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) ("Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." (citations omitted)); *see also Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983) ("Allowing the plaintiff in this case to invoke section 1983 in the absence of a showing that state remedies are deficient would 'make of the fourteenth amendment a font of tort law to be

---

[3] Sawyers also repeatedly attempts to insinuate that he was singled out by Drummond. The record reflects, however, that Drummond prepared criminal complaints against Walker, Boards, and Sawyers. Ultimately, the Allen County Attorney chose not to pursue the criminal charges against Walker and Boards, but that decision was outside of Drummond's control.

superimposed upon whatever systems may already be administered by the States.'" (quoting *Parratt v. Taylor*, 451 U.S. 527, 544 (1981))).

The Court will look beyond the pleading insufficiencies to consider the merits of this claim. The Supreme Court has noted that "[t]he due process requirements for criminal proceedings do not include a standard for the initiation of a criminal prosecution." *Albright v. Oliver*, 510 U.S. 266, 283 (1994) (Kennedy, J. and Thomas, J., concurring). The Fourth Amendment and its protection against malicious prosecution are the more appropriate basis for Sawyers' claim rather than "the more generalized notion of substantive due process . . . ." *Id.* at 273 (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Cherry v. Howie*, No. 5:14-CV-179-TBR, 2016 WL 3094712, at *9 (W.D. Ky. June 1, 2016) ("[I]t is the Fourth Amendment and its protections against malicious prosecution rather than the 'more generalized notion of substantive due process' that provides [the] [plaintiff] with a source of constitutional protection." (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006))).

To prevail on Sawyers' malicious prosecution claim under 42 U.S.C. § 1983, Sawyers must prove the following:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Skyes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (alterations in original) (quotation marks omitted) (internal citations omitted). Based on the facts of this case, Drummond was

involved in initiating the criminal proceedings against Sawyers, Sawyers was charged and indicted, and a jury ultimately acquitted Sawyers of the misdemeanor menacing charges. Thus, the linchpin to the federal malicious prosecution claim is whether probable cause existed.

As the Supreme Court has held, probable cause "is a reasonable ground for belief of guilt . . . ." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)); *see also Howell v. Sanders*, 755 F. Supp. 2d 789, 791 n.1 (E.D. Ky. 2010) ("Probable cause 'is a reasonable ground for belief.'" (quoting *Pringle*, 540 U.S. at 371)).

> [I]t has long been settled that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." Therefore, [when] Plaintiff was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim.

*Higgason v. Stephens*, 288 F.3d 868, 977 (6th Cir. 2002) (internal citation omitted) (citation omitted). "An exception to [] [this] rule applies where the indictment was obtained wrongfully by defendant police officers who knowingly present false testimony to the grand jury." *Cook v. McPherson*, 273 F. App'x 421, 424 (6th Cir. 2008) (citing *Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002)); *see also McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) ("If plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." (internal quotation marks omitted) (citation omitted)).

In support of this claim, Sawyers repeatedly points out what he perceives as deficiencies in Drummond's investigation or inaccuracies in Drummond's understanding of what occurred during the incident outside of his presence. The allegedly erroneous testimony is as follows: (i) Drummond's deposition testimony reflects that he did not know that Sawyers was following

Walker's vehicle because Sawyers believed that all law enforcement officers were preoccupied when he attempted to obtain the license plate number of Walker's vehicle; (ii) Drummond failed to tell the grand jury that Sawyers was not closely following Walker's vehicle because Drummond did not know that information; and (iii) Drummond instituted the criminal action against Sawyers at the direction of the Allen County Sheriff. (Pls.' Resp. to Mot. for Summ. J. 3-4).

First, Drummond's grand jury testimony cannot be used as evidence to support any federal claim. In *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), the Supreme Court held "that grand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Id.* at 1506. Accordingly, to extent that Sawyers bases his federal claims on Drummond's grand jury testimony, Drummond has absolute immunity for that testimony. *See Sanders v. Jones*, No. 15-6484, 2017 WL 75788, at *7 (6th Cir. Jan. 9, 2017) (citing *Rehberg* and noting that its holding applies to all witnesses testifying before a grand jury); *Tucker v. Heaton*, No. 5:14-CV-00183-TBR, 2015 WL 3935883, at *3 (W.D. Ky. June 26, 2015) (citing *Rehberg* and holding that witnesses enjoyed absolute immunity from civil suits from allegedly false grand jury testimony).

The substance of Drummond's deposition testimony and his preparation of the criminal complaint at the Sheriff's direction do not rise to the level of material false statements or statements made in reckless disregard for the truth.[4] *See Ferguson*, 199 F. Supp. 2d at 627 (citing *Hutsell*, 5 F.3d at 1003). At best, Sawyers has criticized Drummond's investigation and attempts to second-guess Drummond's handling of case, but negligence alone does not give rise

---

[4] It is unclear how Sawyers believes that Drummond's deposition testimony elicited in this case had any impact on the existence of probable cause in the prior criminal proceeding.

to liability under 42 U.S.C. § 1983. *See Provience v. City of Detroit*, 529 F. App'x 661, 667 (6th Cir. 2013) ("Provience has not raised a genuine issue of material fact as to whether Sergeant Moore was reckless in relying on Wiley's eyewitness account—even if that account did not comport with every detail of other witnesses' statements. Sergeant Moore was at most negligent, and this court has held that investigatory negligence 'does not demonstrate knowing or intentional behavior designed to violate [plaintiff's] constitutional rights.'" (alteration in original) (quoting *Ahlers*, 188 F.3d at 373-74)). Moreover, there does not appear to be any question that witnesses, including Sawyers and Walker, told Drummond that both men had pointed loaded guns at each other. That information would certainly constitute probable cause on the menacing charges, at a minimum.

Drummond's testimony at the preliminary hearing also does not support Plaintiffs' federal claims. Sawyers was represented by counsel during that hearing, and his counsel had the opportunity to cross-examine Drummond.[5] Based on the evidence presented at the hearing, the Allen District Court concluded that there was probable cause to bind the matter over to the grand jury. Because Sawyers had "a full and fair opportunity to litigate whether probable cause existed to maintain . . . [the] charge[s] against him, he is barred from relitigating that issue in this § 1983 action." *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1999.

For these reasons, Sawyers has failed to prove that there was a lack of probable cause. Accordingly, Drummond is entitled to summary judgment on Sawyers' due process claims.

   c. **Official Capacity Claims**

From the face of the Complaint, it is unclear whether Sawyers has asserted claims against Drummond in his official capacity. "Official-capacity suits, in contrast, 'generally represent

---

[5] The video recording of preliminary hearing is almost one hour long, and Sawyers' cross-examination of Drummond lasted approximately thirty-three minutes.

only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 232, 237-38 (1985) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). As a result, Plaintiffs' official-capacity claims against Drummond are actually claims against Allen County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (citation omitted).

To impose liability on Allen County, Sawyers "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [this] particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). As outlined above, Sawyers has failed to prove a constitutional violation. *See Scherzinger v. Bolton*, No. 3:11-CV-00011-H, 2013 WL 3821734, at *2 (W.D. Ky. July 23, 2013) ("[T]his Court determined that Plaintiff failed to make out a constitutional violation with respect to his excessive force claims under the Fourth and Eighth Amendment, wrongful arrest claim under the Fourth Amendment, and deliberate indifference claim under the Fourteenth Amendment. . . . "[T]hose findings have implications for the official capacity claims, as the failure to make out a constitutional violation precludes Plaintiff from meeting the first prong of federal municipal liability.'" (citation omitted)). In addition, Sawyers has failed to identify any policy or custom that caused any constitutional injury to him. Accordingly, the Court will grant summary judgment on any official capacity claim asserted against Drummond.[6]

---

[6] Allen County would also be immune from liability for punitive damages under 42 U.S.C. § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Barnier v. Szentmiklosi*, 810 F.2d 594, 598-99 (6th Cir. 1987).

### 2. State Law

In addition to the federal claims, Plaintiffs assert claims of malicious prosecution, loss of consortium, and punitive damages under state law. Summary judgment is also warranted on those claims.

#### a. Malicious Prosecution

Recently, in *Martin v. O'Daniel*, Nos. 2014-SC-000373-DG, 2014-SC-000389-DG, & 2014-SC-000394-DG, 2016 WL 5244518 (Ky. Sept. 22, 2016), the Kentucky Supreme Court restated the elements of malicious prosecution claim. *See id.* at *10. Under Kentucky law, the six basic elements of a malicious prosecution claim are:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
> 2) the defendant acted without probable cause;
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . . ;
> 4) the proceeding . . . [was] terminated in favor of the person against whom it was brought; and
> 5) the plaintiff suffered damages as a result of the proceeding.

*Id.* at *8. As the Kentucky Supreme Court has noted, "[t]he law generally disfavors the tort of malicious prosecution because 'all persons [should] be able to freely resort to the courts for redress of a wrong . . . .'"[7] *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (second alteration in original) (quoting *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981)). Whether Sawyers' malicious prosecution claim is analyzed under the current or prior elements, summary judgment is warranted because he has failed to present sufficient evidence of a lack of probable

---

[7] While "malice may be inferred from a lack of probable cause," that inference is inapplicable in the case *sub judice* because probable cause existed in this case. *Massey v. McKinley*, 690 S.W.2d 131, 133 (Ky. App. 1985) (citing *Sweeney v. Howard*, 447 S.W.2d 865 (Ky. 1969)).

cause or malice.[8] *See Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40-41 (Ky. 1931) ("Malice and want of probable cause are the essentials in an action for malicious prosecution." (citations omitted)).

As with Sawyers' federal due process claim, he may not rely upon Drummond's grand jury testimony to prove a state-law malicious prosecution claim. Under Kentucky law, grand jury testimony is protected by an absolute privilege. *See Reed v. Isaacs*, 62 S.W.3d 398, 399 (Ky. App. 2000) ("[I]t is a well-settled rule in practically all jurisdictions that the [false] testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him." (internal quotation marks omitted) (quoting *McClarty v. Bickel*, 159 S.W. 783, 784 (Ky. 1913))); *see also Bryant v. Kentucky*, 490 F.2d 1273, 1274 (6th Cir. 1974) (per curiam) ("Under the law of Kentucky, a witness before a grand jury who provides false testimony is liable for a criminal action in perjury, but not for any civil action such as malicious prosecution since testimony in a judicial proceeding is privileged as a matter of public policy." (citing *McClarty*, 159 S.W. at 784)); *see Tucker*, 2015 WL 3935883, at *3 (citing *Reed* and holding that witnesses' grand jury testimony was privileged).

Based on the evidence in the record, Sawyers has failed to prove that there was a lack of probable cause for the same reasons discussed in analyzing his federal malicious prosecution

---

[8] Prior to the decision in *Martin v. O'Daniel*, the six basic elements of a malicious prosecution claim were:

> (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Raine v. Drasin*, 621 S.W.2d 895, 889 (Ky. 1981) (citations omitted).

14

claim. "Probable cause is that which 'would induce a man of ordinary prudence to believe that the person prosecuted had committed the crime charged.'" *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (quoting *Louisville & N.R. Co. v. Sharp*, 140 S.W.2d 383, 385 (Ky. 1940)). Based on the information that Drummond obtained from the Walker, Boards, and Sawyers immediately after the incident, the Court finds that Drummond had probable cause to charge Sawyers with menacing and wanton endangerment. While Sawyers disputes the version of the events conveyed by Walker and Boards to Drummond, Drummond had received information that Sawyers had pointed a firearm at Walker and followed Walker's truck despite being order to stop the chase. The existence of probable cause on the menacing charges was confirmed by the Allen County Grand Jury's indictment. The Court finds that there was sufficient evidence to support the grand jury's determination of probable cause on the menacing charges.

Sawyers has also failed to present any proof on the element of malice.[9] As Kentucky's highest court held long ago, malice in the context of a malicious prosecution claim "is the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose." *Stearns Coal Co.*, 37 S.W.2d at 40-41 (citations omitted). The criminal complaint was prepared at the direction of the Allen County Sheriff, reviewed by the Sheriff, and then forwarded to the Allen County Attorney. (Drummond Dep. 10:13-11:3; Cooke Dep. 34:5-35:7, 40:20-25; Cooke Dep. Ex. 3). While Sawyers insinuates that he was singled out for what occurred during the incident, Drummond also prepared criminal complaints against Walker and Boards. (Drummond Dep. 9:22-10:3). The fact that the prosecutor did not pursue those

---

[9] Malice was not an element of Sawyers' federal malicious prosecution claim. *See Burden v. Paul*, No. 2009-105 (WOB-JGW), 2011 WL 44331819, at *5 (E.D. Ky. Sept. 22, 2011) ("Malice is not an element of a federal malicious prosecution claim and, in fact, the defendant's subjective intent is irrelevant." (citing *Skyes*, 625 F.3d at 309-10)).

complaints against Walker and Boards to trial does not demonstrate any malice by Drummond towards Sawyers.

The Court has reviewed the evidence in the record and has not found evidence indicating any ulterior motive in Drummond's preparation of the criminal complaint against Sawyers at the Sheriff's direction.[10] As discussed above, Sawyers has repeatedly criticized the thoroughness of Drummond's investigation and his lack of information about some of the details of the incident. None of those criticisms, however, reflects intentional conduct or rises to the level of malice attributable to Drummond.

For these reasons, Sawyers has failed to present sufficient evidence in support of his state-law malicious prosecution claim to defeat Drummond's motion for summary judgment. The Court will grant summary judgment on Sawyers' state-law malicious prosecution claim.

    **b.**  **Loss of Consortium**

Elizabeth Sawyers has asserted a loss of consortium claim. (Compl. ¶¶ 26-28). As this Court has held, "[a] loss of consortium claim 'is derivative in nature, arising out of and

---

[10] In his deposition, Cooke stated several times that he told Drummond to do his job regarding this incident. (Cooke Dep. 27:17-19, 30:15-31:9, 51:4-52:3). Cooke, however, more specifically also testified:

> Q. Now, you told us that you told Charlie Drummond to do his job and charge the—I believe you said to charge the people that he believed he had probable cause to charge, is that accurate?
> A. Yes.
> Q. Okay. So—and those were your orders to him as sheriff?
> A. Yes.
> Q. And you expect your deputies to follow your lawful orders, do you not?
> A. Yes.
> Q. Okay. So, then if he believed—if he determined that there was probable cause based on the facts to charge these three individuals, then he followed your orders, correct?
> A. Correct.

(Cooke Dep. 41:22-42:11).

dependent upon the right of the injured spouse to recover.'" *McDaniel v. BSN Med., Inc.*, No. 4:07-CV-00036, 2010 WL 4779767, at *4 (W.D. Ky. Nov. 16, 2010) (quoting *Floyd v. Gray*, 657 S.W.2d 936, 941 (Ky. 1983)); *see also Stamper v. Stainless Steel Invest, Inc.*, No. 3:11-CV-00069-EBA, 2012 WL 2590353, at *5-6 (E.D. Ky. July 3, 2012) (quoting *McDaniel* and denying a loss of consortium claim when her husband's tort claim was barred). Because summary judgment is warranted on Sawyers' claims, the Court will grant summary judgment on the loss of consortium claim asserted by Elizabeth Sawyers as well.

### c. *Punitive Damages*

While Plaintiffs have asserted a claim for punitive damages, punitive damages are not a separate cause of action, as noted above. *See Dalton*, 913 F. Supp. 2d at 378-79 (citation omitted). Accordingly, to the extent that Plaintiffs have attempted to seek a separate cause of action for punitive damages, summary judgment is also warranted.

### d. Official Capacity Claims

In general, claims against counties are barred by sovereign immunity. *See Comair, Inc. v. Lexington-Fayette Cty. Urban Cty. Airport Corp.*, 295 S.W.3d 91, 94 (Ky. 2009) (citation omitted). KRS 70.040, however, has been construed by the Kentucky Supreme Court as a legislative waiver of sovereign immunity resulting in a sheriff being liable "for the tortious acts or omissions of his deputies." *Bond v. Carter Cty.*, No. 14-140-DLB-EBA, 2015 WL 3619228, at *3 (E.D. Ky. June 9, 2015) (internal quotation marks omitted) (quoting *Jones v. Cross*, 260 S.W.3d 343, 346 (Ky. 2008)). This Court has already concluded that Plaintiffs failed to prove their tort claims against Drummond, and the official capacity claims fall as well.

17

### B.     Defendant's Motion in Limine

Because summary judgment is warranted on Plaintiffs' claims, it is unnecessary to address the merits of Defendant's motion in limine. Accordingly, that motion is denied as moot.

### IV.     CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 36) is **GRANTED**, and Defendant's Motion in Limine (DN 35) is **DENIED AS MOOT**.

**Greg N. Stivers, Judge**
**United States District Court**
January 18, 2017

cc:     counsel of record
        Plaintiffs, *pro se*